UNITED STATES of America,
Plaintiff, Appellee,

v.

$250,000 IN UNITED STATES CURRENCY, Defendant,
Appellee. (Two Cases)

Appeal of Amador
RODRIGUEZ–RAMOS,
et al. (Two Cases)

Nos. 85–1008, 85–1045.

United States Court of Appeals,
First Circuit.

Argued Sept. 9, 1986.

Decided Jan. 9, 1987.

Eric G. Gibson, Oak Park, Ill., (argued) with whom Elliot Samuels, Chicago, Ill., was on brief for appellants.

Sara Criscitelli, Dept. of Justice, Washington, D.C., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief for the U.S.

Before COFFIN, Circuit Judge, and WISDOM * and ALDRICH, Senior Circuit Judges.

WISDOM, Senior Circuit Judge.

This appeal is from a civil forfeiture action under 21 U.S.C. § 881(a)(6). The United States sought forfeiture of $250,000 that Amador Rodriguez-Ramos had posted as bail pending his appeal from a criminal conviction under federal drug laws. The United States alleged that it had probable cause to believe that the bail money was derived from illegal drug transactions. Amador Rodriguez-Ramos and his attorneys, Michael Guinan and Scott Kalisch, answered the government's complaint.[1] After a bench trial, at which only the government presented evidence, the district court ordered forfeiture. The individual claimants appeal, contending that the government failed to show probable cause to support the forfeiture. Additionally, the claimants raise a number of constitutional issues for the first time. We find no merit in the constitutional claims nor any error in the district court's finding of probable cause. We affirm.

I.

21 U.S.C. § 881(a)(6) provides that property exchanged for or intended to be exchanged for illegal controlled substances is subject to forfeiture to the United States.[2] Section 881(d) directs that the burden of proof in a forfeiture action is controlled by 19 U.S.C. § 1615.[3] Under 19 U.S.C. § 1615, the government must initially show probable cause to believe that the property was connected with illegal drug transactions. Once probable cause is shown, the private claimant bears the burden of proving by a preponderance of the evidence that the property was not involved in illegal drug transactions.[4] To show probable cause, the government need only show a "reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion."[5] Be-

---

* Of the Fifth Circuit, sitting by designation.

1. The attorneys claimed an interest by virtue of an assignment from Rodriguez.

2. 21 U.S.C. § 881 (1982) provides in relevant part:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 . . . .
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter. . . .

3. 21 U.S.C. § 881(d) (1982) provides:
 The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws . . . shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof . . .
 19 U.S.C. § 1615 (1982) provides the burden of proof in forfeiture actions brought under the Tariff Act of 1930 and, therefore, is applicable to this action. *United States v. $5,644,540,* 799 F.2d 1357, 1362 (9th Cir.1986).

4. *United States v. One 1974 Porsche 911–S Vehicle,* 682 F.2d 283, 285 (1st Cir.1982); *United States v. $364,960,* 661 F.2d 319, 322 n. 10 (5th Cir.1981); *United States v. $5,644,540,* 799 F.2d 1357, 1362 (9th Cir.1986); *United States v. $4,255,000,* 762 F.2d 895, 904 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

5. *United States v. $364,960,* 661 F.2d 319, 323 (5th Cir.1981); *United States v. $5,644,540,* 799 F.2d 1357, 1362 (9th Cir.1986); *United States v.*

cause the question is one of law, the district court's finding of probable cause is subject to plenary review.[6] Therefore, we must examine the evidence produced by the government and determine whether probable cause exists to support the forfeiture.

■ Fortunato Gorge, special agent for the Drug Enforcement Administration, testified concerning the undercover operation that led to Rodriguez's arrest and conviction. Working undercover, Agent Gorge met with Rodriguez several times. Rodriguez was interested in purchasing at least three kilograms of high quality cocaine for his customers. Rodriguez boasted that he had amassed about two million dollars in cash and had acquired real estate in Puerto Rico and Chicago in ten years of trafficking in cocaine and heroin. Gorge testified that Rodriguez appeared to be a man of means; he was well-dressed, wore expensive jewelry, carried a "roll of cash" of perhaps several thousand dollars, and invited Gorge to one of his homes in Arecibo, at which Gorge saw several of Rodriguez's automobiles.

George Stern, special agent for the Internal Revenue Service, testified concerning the circumstances of Rodriguez's conviction. Based upon the evidence gathered in the undercover operation, Rodriguez was arrested, charged, and eventually convicted for distribution, possession with intent to distribute, and conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 846. Rodriguez posted $100,000 bail after his arrest, an additional $50,000 after his conviction, and another $100,000 after sentencing and pending his appeal. After the posting of the final $100,000, the district court held a *Nebbia*[7] hearing into the source of the bail money. Rodriguez testified that part of the bail money came from savings that he had accumulated while working for his brother at Ruben's Auto Sales in Chicago for the past few years. He also identified fourteen friends and relatives who allegedly gave him the balance of the $250,000. Of these fourteen, four denied, under oath before a grand jury, giving Rodriguez any money, another denied, to Agent Stern, giving Rodriguez any money, two pleaded their fifth amendment rights before a grand jury, and six could not be located by Agent Stern at the addresses given by Rodriguez. Only one of the fourteen admitted giving Rodriguez some money.

The government also introduced evidence tending to disprove any lawful source of income for Rodriguez. James Howe, special agent for the IRS, testified that his investigation of Ruben Auto Sales indicated that Rodriguez was never employed there. The government also presented certified copies of Rodriguez's Social Security records, which indicate that he has had no reported income since 1970 and only sporadic income before then.

Finally, the government introduced evidence concerning Rodriguez's method of posting bail. $139,000 was posted by four cashier checks. The checks, introduced into evidence, indicate that they were purchased across the street from the district court at the San Juan branch of the Banco de Ponce. The corresponding receipts, provided by the bank and identified at trial by the bank's manager, indicate that each check was purchased by Rodriguez or his attorney, Michael Guinan. Three bank tellers testified that on the dates indicated on each check, an unidentified man purchased a cashier's check in the same amount. Each time, the check was purchased with

---

*$4,255,000,* 762 F.2d 895, 903 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *see also United States v. One 1974 Porsche 911–S Vehicle,* 682 F.2d 283, 285 (1st Cir.1982).

**6.** *United States v. $364,960,* 661 F.2d 319, 323 (5th Cir.1981); *United States v. $93,685.61,* 730 F.2d 571, 572 (9th Cir.1984), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984); *United States v. $4,255,000,* 762 F.2d 895, 903 n. 17 (11th Cir. 1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

**7.** *United States v. Nebbia,* 357 F.2d 303 (2d Cir. 1966). A *Nebbia* hearing is an inquiry into those who provided the defendant's bail and their motives for the purpose of assessing the likelihood of flight.

cash, collected in disorganized stacks of mostly small denominations. One cashier testified that it took her about forty-five minutes to count the cash for one check.

We find that the evidence shows probable cause to believe that the bail money was derived from illegal drug transactions. Rodriguez told government agents that he had earned substantial amounts from a ten year career in heroin and cocaine dealing. His appearance of wealth corroborates his admissions. The absence of any apparent legitimate sources for the $250,000 suggests that the money is derived from drug transactions.[8] The method of posting bond—purchasing cashier's checks with large amounts of small denomination bills, in disorganized stacks—also suggests that the bail was paid with drug money.[9] Although no particular circumstance is conclusive, we must look at the "aggregate" of the facts.[10] Moreover, the government's evidence need not exclude other plausible hypotheses of the source of the money.[11] Instead, we should apply "common experience considerations" in deciding whether the money is probably derived from drug transactions.[12] Viewing the government's presentation as a whole, we find probable cause to believe that the bail money was derived from illegal drug transactions.

Rodriguez did not present any evidence at trial. Rather, he now attacks the government's showing of probable cause on several grounds. First, he argues that the evidence from the *Nebbia* hearing was improperly admitted because the transcript of that hearing was not introduced into evidence. The only evidence of the *Nebbia* hearing was the testimony of Agent Stern, who had read the transcript as part of his investigation.

■ Whether Stern's testimony concerning Rodriguez's statements in the *Nebbia* hearing is admissible evidence is irrelevant to the question of probable cause. The government is not required to prove by admissible evidence that the bail money is drug-related. The government need only show *that it has probable cause to believe* that the money is drug-related. This showing can be made wholly with otherwise inadmissible evidence.[13] The court's only concern is whether the evidence is reliable enough to support a showing of probable cause.[14] We find that Sterns's testimony concerning the *Nebbia* hearing is reliable because he also testified as to his later actions taken on the basis of the *Nebbia* hearing. We find it unlikely that the government would have sought out fourteen individuals purportedly identified by Rodriguez, convened a grand jury, and investigated Rodriguez's employment background, unless Rodriguez had indeed testified at the *Nebbia* hearing as Stern said he did.

■ Rodriguez argues that the government failed to properly trace the bail money to any particular drug transaction. The government need not, however, produce any evidence linking the money to any

---

8. *See United States v. Brock,* 747 F.2d 761, 763 (D.C.Cir.1984); *United States v. Certain Real Property Situated at Route 3,* 568 F.Supp. 434, 436 (W.D.Ark.1983).

9. *See United States v. $364,960,* 661 F.2d 319, 324 (5th Cir.1981); *United States v. $93,685.61,* 730 F.2d 571, 572 (9th Cir.1984), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984); *United States v. $4,255,000,* 762 F.2d 895, 903 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

10. *United States v. $93,685.61,* 730 F.2d 571, 572 (9th Cir.1984), *cert. denied sub nom. Willis v. United States,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984).

11. *United States v. $364,960,* 661 F.2d 319, 324 (5th Cir.1981).

12. *United States v. $5,644,540,* 799 F.2d 1357, 1362 (9th Cir.1986).

13. *United States v. One 1974 Porsche 911–S Vehicle,* 682 F.2d 283, 286 (1st Cir.1982); *United States v. $5,644,540,* 799 F.2d 1357, 1362 (9th Cir.1986).

14. *See United States v. One 1974 Porsche 911–S Vehicle,* 682 F.2d 283, 286 (1st Cir.1982); *United States v. One 56 Foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983).

particular drug transaction.[15] The government must show only that the money was *probably* derived from illegal drug transactions. Having shown unrebutted probable cause, the government is entitled to forfeiture.[16]

## II.

Rodriguez challenges the constitutionality of the burden of proof in the forfeiture proceeding on two grounds. First, he argues that the allocation of the burden of proof in the forfeiture proceeding violates due process. Second, he argues that the burden of proof violates his fifth amendment right against self-incrimination. We find neither argument persuasive.

 Once the government has shown probable cause, the claimant must prove by a preponderance of the evidence that the claimed property was not derived from illegal drug transactions. Rodriguez contends that, because of the quasi-criminal nature of the section 881 forfeiture proceeding, the burden of proof cannot be placed on him without violating constitutional guarantees of due process. Every circuit that has considered the question—

the Second, Ninth, and Tenth Circuits—has firmly rejected the argument that Rodriguez now makes.[17] We reject it as well. Generally, Congress may alter the traditional allocation of the burden of proof without infringing upon the litigant's due process rights unless the statute is criminal in nature.[18] Although the Supreme Court has considered forfeiture statutes as criminal for the purpose of protecting certain fourth and fifth amendment rights,[19] they are predominantly civil in nature.[20] The Supreme Court, recognizing the historic civil nature of forfeiture statutes, has repeatedly refused to limit their application by imposing the full range of constitutional protections usually associated with criminal sanctions.[21] The burden of proof provided in a section 881 forfeiture proceeding is constitutional.

 Rodriguez also argues that the burden of proof is unconstitutional because it compels him to waive his fifth amendment right against self-incrimination to testify and rebut the government's showing of probable cause. In other words, he faces a dilemma: remain silent and allow the forfeiture or testify against the forfeitability

---

15. *United States v. 5,644,540,* 799 F.2d 1357, 1362–63 (9th Cir.1986); *United States v. $4,255,000,* 762 F.2d 895, 903–04 (11th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986); *see also United States v. Brock,* 747 F.2d 761, 762 (D.C.Cir.1984).

16. We find only one other of Rodriguez's evidentiary arguments that requires discussion. The trial court noted an earlier narcotics conviction of Rodriguez in finding probable cause. We are not sure of how the judge acquired this knowledge, because it is not in the record. Apparently, the government's attorney advised the judge as to the testimony he intended to elicit, but, upon eliciting that testimony, the attorney forgot to ask the nature of the conviction. We agree that the district court should not have found that fact without support in the record. Nevertheless, we find that the lack of this evidence does not significantly lessen the strength of the government's showing of probable cause.

17. *United States v. $2,500,* 689 F.2d 10, 12 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States,* 466 U.S. 1099, 104 S.Ct. 2376, 80 L.Ed.2d 123 (1984); *United States v. One 1970 Pontiac GTO,* 529 F.2d 65, 66 (9th Cir.1976); *Bramble v.*

*Richardson,* 498 F.2d 968, 979 (10th Cir.1974), *cert. denied sub nom. Bramble v. Saxbe,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

18. *See Lavine v. Milne,* 424 U.S. 577, 585, 96 S.Ct. 1010, 1016, 47 L.Ed.2d 249 (1976).

19. *See United States v. United States Coin and Currency,* 401 U.S. 715, 721–22, 91 S.Ct. 1041, 1044–45, 28 L.Ed.2d 434 (1971); *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886).

20. *United States v. $2,500,* 689 F.2d 10, 12 (2d Cir.1982), *cert. denied sub nom. Aponte v. United States,* 466 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *see also United States v. One 1974 Porsche 911–S Vehicle,* 682 F.2d 283, 285 (1st Cir.1982), in which this Court noted: "A forfeiture proceeding is a civil, *in rem* action that is independent of any factually related criminal actions."

21. *E.g., Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); *One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972).

of his property and expose himself to incriminating admissions.[22] Certainly, Rodriguez may assert his right against self-incrimination in a forfeiture proceeding.[23] This does not mean, however, that the forfeiture action is barred because of the possibility that the claimant will be disadvantaged by remaining silent. Even if the forfeiture would genuinely prejudice the claimant's fifth amendment rights, the court should not dismiss the forfeiture, but should seek alternative means of accommodating both the claimant's rights and the government's interest in the forfeiture.[24]

■■■ Here, we find no genuine conflict between the forfeiture and Rodriguez's fifth amendment rights. Rodriguez never raised any conflict before the trial court and now raises only a naked assertion that his fifth amendment rights may be compromised. A blanket assertion of the privilege is no defense to the forfeiture proceeding.[25]

### III.

■■■ Rodriguez also challenges the forfeiture as a violation of the *ex post facto* clause. Congress added subsection 881(a)(6) in 1978.[26] The government did not specifically show that the bail money is proceeds from drug transactions that occurred after 1978. Therefore, argues Rodriguez, to the extent that the bail money represents proceeds from transactions that occurred before 1978, forfeiture of that amount would violate the prohibition of *ex post facto* laws.[27]

We do not reach the constitutional issue, because we find that the government's evidence shows probable cause to believe that the bail money was derived from transactions *after* 1978. The bail money was posted in late 1981, over three years after the effective date of section 881(a)(6). Because Rodriguez had claimed to have earned over $2,000,000 in cash plus other property in ten years, it is reasonable to believe that he had accumulated at least $250,000 in the three years after 1978. Arguably, this inference is not compelling, but Rodriguez had the burden of rebutting the government's showing of probable cause. At the trial, he offered no evidence nor even naked allegations that any of the bail money was derived from transactions before 1978.

### IV.

Amador Rodriguez-Ramos was convicted of violations of the federal drug laws. The government then sought forfeiture of the $250,000 bail he had posted. At the forfeiture trial, the government presented evidence tending to show that the money was derived from illegal drug transactions. Rodriguez presented no evidence to rebut the government's showing. Although the government's evidence is circumstantial, it does show probable cause. A showing of probable cause is sufficient to support forfeiture and does not infringe on any of Rodriguez's constitutional rights.

---

22. For example, if Rodriguez could prove that the money was proceeds from jewel thefts, it would not be subject to forfeiture, but Rodriguez would have subjected himself to prosecution for theft.

23. *See In re Kave*, 760 F.2d 343, 354 (1st Cir. 1985), in which this Court said:
 although the Constitution couches this privilege in terms of criminal cases, it is now beyond question that the right of a witness not to give incriminating answers applies with equal force to any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory, whenever the answer to a question put to a witness might tend to subject him to criminal responsibility.

24. *United States v. United States Currency*, 626 F.2d 11, 15 (6th Cir.1980), *cert. denied sub nom. Gregory v. United States*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980).

25. *United States v. Little Al*, 712 F.2d 133, 135–36 (5th Cir.1983).

26. Pub.L. No. 95–633, § 301(a)(1), 92 Stat. 3768, 3777 (1978).

27. Rodriguez relied on the case of *United States v. Lot No. 50*, 557 F.Supp. 72 (D.Nev.1982). That case was recently overruled by *United States v. $5,644,540*, 799 F.2d 1357, 1364 n. 8 (9th Cir.1986), which held that the *ex post facto* clause does not apply to § 881 forfeiture proceedings.

The judgment of the district court is AFFIRMED.