915 F.2d 1556
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES of America, Plaintiff, Appellee,
v.
ONE RURAL LOT LOCATED AT BARRIO MONTANA, etc.,
Alejandro Lopez, Claimant, Appellant.
 No. 89-2072.
 United States Court of Appeals, First Circuit.
 July 25, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico, Raymond L. Acosta, District Judge.
 Alejandro Lopez on brief, pro se.
 Daniel F. Lopez Romo, United States Attorney, and Eduardo E. Toro Font, Assistant United States Attorney, on brief, for appellee.
 D.P.R.
 VACATED AND REMANDED.
 Before BREYER, Chief Judge, and CAMPBELL and TORRUELLA, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant, Alejandro Lopez, appeals from a decree of forfeiture entered by the United States District Court for the District of Puerto Rico.
 
 I.
 
 2
 The court entered a decree forfeiting real estate properties in Puerto Rico pursuant to 21 U.S.C. Sec. 881(a)(6):
 
 
 3
 [T]he following shall be subject to forfeiture to the United States and no property right shall exist in them ...
 
 
 4
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter [or] all proceeds traceable to such an exchange....
 
 
 5
 These properties allegedly were purchased by Lopez with proceeds from drug trafficking. According to Lopez, these properties were purchased by him in 1983 and 1984. The government does not dispute this statement.
 
 
 6
 In 1988, Alejandro Lopez was convicted in New York State Supreme Court of criminal possession of a controlled substance in the first degree and conspiracy in the second degree. He was sentenced to a term of 33 1/3 years to life imprisonment and currently is incarcerated in New York.
 
 
 7
 In support of its contention that there is probable cause to believe that the purchase of the Puerto Rico properties was traceable to the proceeds of drug trafficking the government alleged that a long-term investigation which provided the evidence at trial and other information demonstrated that Lopez had been the head of a large cocaine organization for fifteen years. It presented the following information in its complaint. First, the government pointed to the evidence presented at the New York trial. This evidence revealed that Lopez was the head of a multi-million dollar drug business--"The Rock" cocaine organization. During 1985-1987, the Rock organization sold 4,000 to 10,000 bags of cocaine per day. Drug records for the period 1985 and 1986, seized at Lopez's New York and New Jersey properties, also showed large sales of cocaine during these years.
 
 
 8
 Second, the government relied on Lopez's history of previous arrests. These arrests are as follows:
 
 
 9
 1. A pending indictment in New Jersey for drug possession and conspiracy (dates unspecified);
 
 
 10
 2. May 12, 1983--case based on an arrest for criminal possession of cocaine was dismissed because of an improper search by the arresting officer;
 
 
 11
 3. June 20, 1973--an arrest for robbery and conspiracy to sell cocaine did not result in the Grand Jury noting a true bill; and
 
 
 12
 4. May 23, 1968--case of assault and possession of a weapon was dismissed when the victim refused to testify.
 
 
 13
 Third, the government relies on the fact that, on March 27, 1988, Lopez was arrested on the Puerto Rico properties. At this time, according to the affidavit of a special agent for the Federal Bureau of Investigation, Lopez stated that he had plenty of money, but had chosen not to flee to Brazil. He stated that he had planned to use the Puerto Rico property as the location for his "empire." On March 28, 1988, Lopez stated that his daughter knew that he was a narcotics distributor.
 
 II.
 
 14
 The government filed the complaint for forfeiture in rem against the three parcels of land on February 10, 1989. It also initiated the process to be followed before a forfeiture could be granted.
 
 
 15
 On March 8, 1989, Lopez responded to the forfeiture complaint by filing a letter with the Puerto Rico district court. In it, he indicated that he did not understand the nature of the court proceedings, made a claim to the property at issue, denied the allegations of the Federal Bureau of Investigation, requested the appointment of counsel and a hearing on the forfeiture complaint. The court deemed the letter a motion in opposition to seizure and ordered the government to respond. The government responded, stating that on February 10, 1989, a United States magistrate had found probable cause to believe that the purchase of the properties was made with proceeds traceable to drug activity. The government stated that it accepted his letter as a claim and answer to the complaint. It also requested the court to order Lopez to hire an attorney within thirty days of March 27, 1989. On March 31, 1989, the court ordered Lopez to hire an attorney by May 1, 1989. On April 14, 1989, Lopez again expressed confusion as to the proceedings and again requested the appointment of counsel. On April 20, 1989, the court denied the request by Lopez for the appointment of counsel, noting that the case was civil in nature.
 
 
 16
 On May 11, 1989, the government filed a motion asking that since no attorney had appeared for Lopez, his claim be dismissed. Lopez wrote a letter, dated May 24, 1989 (docketed on June 19, 1989) indicating that he and his relatives were attempting to obtain counsel. He stated that in six to eight weeks, he possibly could have an attorney ready to appear in court. On June 12, 1989 (before the May 24th letter had been received) the court stated that Lopez had violated its order of March 31, 1989 and gave him until July 10, 1989 to obtain counsel or show cause why the forfeiture should not be decreed as requested by the government. The court added that "[f]ailure to [comply] will result in a dismissal of his claim and a proceeding in absentia wherein the forfeiture shall be decreed upon the proper presentation of evidence by plaintiff pursuant to 21 U.S.C. Sec. 881."
 
 
 17
 After more correspondence from Lopez concerning his difficulties in obtaining counsel, and another motion by the government requesting a decree of forfeiture, the court entered a decree, on September 13, 1989, noting that Lopez's pleadings had been dismissed for failure to comply with the court's order and ordered the defendant properties forfeited to the United States free of liens. On the same day, the court dismissed the claim filed by Lopez on March 8, 1989, for failure to comply with the court's orders including, we presume, the June 12, 1989 order to show cause.
 
 
 18
 On September 26, 1989, Lopez filed a motion to dismiss the initial complaint and a motion for remission of forfeiture on the grounds that the complaint failed to state a cause of action under 21 U.S.C. Sec. 881(a)(6) and because he had never received personal service of process. In the motion, Lopez argued that the government failed to demonstrate probable cause that the property was connected to illegal drug transactions. On the same day, Lopez also filed a motion entitled "Supplemental Verified Complaint," stating that he had purchased the property from a doctor and his wife under a "gentleman's agreement." He stated that the money used to pay for the property had come from a loan from his father and from income derived from Lopez's business, Taino Sports Center, which he had owned and operated from 1979 to 1987. No documentation accompanied this motion.
 
 
 19
 Before the court ruled on these motions, Lopez filed a notice of appeal on October 31, 1989 from the order and decree of forfeiture entered September 13, 1989 and from the order dismissing his claim. The court, on November 9, 1989, denied Lopez's motion to dismiss the complaint and for remission of forfeiture. No appeal was taken from this order.
 
 III.
 
 20
 In a forfeiture proceeding under Sec. 881(a)(6), the government must initially demonstrate probable cause to believe that the property subject to the forfeiture proceedings was connected to unlawful drug transactions. United States v. $250,000 in United States Currency, 808 F.2d 895, 897 (1st Cir.1987). Probable cause, in this context, means that the government need only establish a " 'reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion.' " Id. (quoting United States v. $364,960, 661 F.2d 319, 323 (5th Cir.1981)); United States v. Four Million, Two Hundred Fifty-five Thousand, 762 F.2d 895, 903 (11th Cir.1985), cert. denied, 474 U.S. 1056 (1986). Circumstantial evidence and inferences therefrom may suffice to support a finding of probable cause. $250,000 in United States Currency, 808 F.2d at 901; Four Million, Two Hundred Fifty-five Thousand, 762 F.2d at 904; United States v. $319,820.00 in United States Currency, 620 F.Supp. 1474, 1477 (N.D.Ga.1985).
 
 
 21
 The government need not show evidence linking a particular narcotics transaction to the property. 808 F.2d at 899-900; 762 F.2d at 904. In reviewing the government's offer of probable cause, the court should apply a common sense view reflecting the realities of normal life in determining whether the property at issue was derived from drug transactions. 808 F.2d at 899; 762 F.2d at 904. Finally, the court should view the totality of the circumstances in establishing whether the government has met its burden of showing probable cause. Id.; 762 F.2d at 903. Once the government demonstrates probable cause, the burden shifts to the claimant to show by a preponderance of the evidence that the property was not connected to alleged drug transactions. 808 F.2d at 897.
 
 
 22
 Before reaching the merits of the decree of forfeiture, we address the district court's denial of Lopez's motions for appointment of counsel. 28 U.S.C. Sec. 1915 (Proceedings in forma pauperis) provides in subsection (d) that
 
 
 23
 [t]he court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.
 
 
 24
 If the action, in this case Lopez's claim to the property, is not frivolous and the allegation of poverty not untrue,[1] the decision to appoint counsel must rest on the district court's careful consideration of all of the circumstances of the case. See Maclin v. Freake, 650 F.2d 885, 887 (7th Cir.1981) (per curiam ).
 
 
 25
 As this court has emphasized, "there is no constitutional right to appointment of counsel in a civil case." Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir.1986) (per curiam ). Only in exceptional circumstances may the appointment of counsel be justified. Id. However, the circumstances of a particular case may make the presence of counsel necessary. Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir.1983). The district court has broad discretion in determining whether to request the appointment of counsel. However, its choice is not left to mere inclination, but rather to its judgment; such judgment should be guided by sound legal principles. Maclin, 650 F.2d at 886-87.
 
 
 26
 Although a very close question, we think the district court should have appointed counsel to represent Lopez. Lopez's claim is not frivolous, as shall be seen later. The government did not object to his affidavit of poverty and there does not appear to be any reason to doubt its veracity. It is true that Lopez owns the parcels of land in Puerto Rico, but the government's forfeiture action has the practical effect of removing the availability of the properties as a source of funds for Lopez. For example, it is difficult to imagine that Lopez could obtain a mortgage on the property to raise sufficient moneys to hire an attorney as the government has, for all practical purposes, removed Lopez's ownership of the property.
 
 
 27
 The factors in determining whether an appointment of counsel is warranted have been set out in Maclin. First, the court must consider the nature of the factual issues raised. Maclin, 650 F.2d at 887. Where the indigent is in no position to investigate crucial facts, counsel may be necessary to a fair presentation of the case. Id. Here, Lopez is in prison in New York. The forfeiture action is in Puerto Rico, the properties are in Puerto Rico, witnesses are in Puerto Rico and documents also are in Puerto Rico. This renders it difficult for Lopez to investigate the government's allegations and to gather the evidence necessary to present his claim to the property. In such a case, the appointment of counsel will advance a proper and more balanced administration of justice. See id.; Shields v. Jackson, 570 F.2d 284, 286 (8th Cir.1978) (per curiam) (where prisoner sued arresting officer to recover personal property and complaint stated a cause of action, court found that he could not have adequately investigated his claim without the aid of a lawyer); Peterson v. Nadler, 452 F.2d 754, 757-58 (8th Cir.1971) (per curiam) (where prisoner brought an action against former attorney for selling prisoner's personal property, he could not investigate truth or falsity of attorney's allegations without the aid of counsel).
 
 
 28
 Second, aside from items such as deeds to the properties, this case presently consists only of testimony of various persons. Lopez's statements contradict those of the F.B.I. agents. He asserts that he bought the property with legally obtained money. Where the only evidence consists of conflicting testimony, "it is more likely that the truth will be exposed where both sides are represented by those trained in the presentation of evidence and in cross examination." 650 F.2d at 888.
 
 
 29
 Third, as can be seen from the correspondence Lopez has filed with the court, Lopez has little grasp of the nature of the proceedings. He obviously does not know how to manage the case or what is expected of him. He had difficulty even in responding to the court's order to show cause why the property should not be forfeited. Again, counsel could help Lopez cope with the complexities of this proceeding for forfeiture in rem--a detailed and formal process a layperson is far from likely to encounter in daily life. Indeed, it is obvious that Lopez has no workable knowledge of the legal process involved in this action. See id. at 888.
 
 
 30
 On a more basic level, the answer to the threshold question whether there is merit to Lopez's claim is a strong indication that counsel is particularly warranted in this instance. See Childs, 705 F.2d at 922. Here, while we do not now resolve the motion, we have serious questions about the strength of the government's case.
 
 
 31
 For example, Lopez's primary argument on appeal is that the drug records presented at the New York State trial did not show any criminal activity prior to 1985 when the properties were purchased. He argues that the government may not rely on his prior criminal record to establish a connection between the purchase of the properties and proceeds from drug transactions. First, he points out that he never was convicted for any of these arrests. Second, he argues that the government may not rely on the May 12, 1983 arrest for possession of cocaine because the seizure of the cocaine was conducted pursuant to an illegal search. See United States v. Thirteen Thousand Dollars in United States Currency, 733 F.2d 581, 584 (8th Cir.1984); United States v. One 1978 Mercedes Benz, Four-door Sedan, 711 F.2d 1297, 1303 (5th Cir.1983) (evidence obtained from a search in violation of fourth amendment must be excluded at a forfeiture proceeding).
 
 
 32
 Although the circumstantial evidence demonstrates that Lopez was engaged in drug trafficking, this evidence primarily concerns the time period after the purchase of the properties. Nonetheless, it is a fair inference that Lopez did not become the head of a cocaine organization overnight. That is, it is a fair inference he was involved in drug trafficking in 1983. However, despite this inference, as well as Lopez's admission of guilt and [his] stated intention to use the Puerto Rico properties as the base for his empire, it is a close question whether the government has demonstrated probable cause to believe that these particular properties were purchased with the proceeds of illegal narcotics transactions.
 
 
 33
 In other cases, the government has usually come up with stronger circumstantial evidence linking the property it wishes forfeited to drug proceeds. For example, in $250,000 in United States Currency, in which the government sought forfeiture of money used for bail pending appeal, it presented social security records revealing that claimant had no reported income, was not employed where he said he had been and had no apparent other source of legitimate income. As for claimant's statements that he had received part of the bail money from friends, the government presented evidence that most of these friends denied giving claimant the money. The claimant had also told government agents that he had earned large amounts of money from a ten year career as a heroin and cocaine dealer. See also United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1434 (9th Cir.1985) (evidence showed that claimant told DEA agent that as claimant was a drug trafficker with no visible means of support other than narcotics business, houseboats were his property and all of his possessions were bought with drug money, although claimant had another "fronting" for him as owner); United States v. Brock, 747 F.2d 761, 762 (D.C.Cir.1984) (per curiam) (affidavit of DEA agent included information from a "reliable informant" that claimant apparently never had a legitimate source of income and that his only source of income during time period in question was from heroin trafficking); United States v. Premises Known as 2639 Meetinghouse Road, 633 F.Supp. 979, 983 (E.D.Pa.1986) (claimant admitted that he manufactured and distributed methamphetamine and invested in bars to conceal drug proceeds).
 
 
 34
 Given the special circumstances of this case, the serious nature of determining property rights and the complexity of the issues, we do not reach the merits of the forfeiture decree. Instead, we believe that the appointment of counsel is warranted. Lopez is entitled to an attorney to aid him in preparing the strongest claim to the property as is possible. Of course, the government is entitled to present any supplementary, relevant evidence it chooses.
 
 
 35
 We therefore vacate the judgment of the district court and remand the case with instructions to allow Lopez's motion to proceed in forma pauperis. The court should then request the appointment of counsel for Lopez pursuant to 28 U.S.C. Sec. 1915(d). Upon such appointment, it shall readjudicate the question of whether the government is entitled to the forfeiture of the Puerto Rico properties.
 
 
 
 [1]
 Lopez submitted an affidavit along with his motion to proceed in forma pauperis. Although Lopez did not fill out a formal court application to proceed in forma pauperis, the information on the affidavit conforms to what is generally required in such application