UNITED STATES of America

v.

**ONE PARCEL OF REAL PROPERTY WITH BUILDINGS, APPURTENANCES, AND IMPROVEMENTS, KNOWN AS PLAT 20, LOT 17, GREAT HARBOR NECK, NEW SHOREHAM, RHODE ISLAND.**

**Civ. A. No. 89–0603 P.**

United States District Court, D. Rhode Island.

May 14, 1991.

---

Michael P. Iannotti, Asst. U.S. Atty., Providence, R.I., for U.S.

Robert Flanders, Flanders & Medeiros, Providence, R.I., for claimants Carol and Joel Beane.

John MacFadyen, Lise Gescheidt, Providence, R.I., for claimant Peter Beane.

## OPINION AND ORDER

PETTINE, Senior District Judge.

Joel and Carol Beane, prevailing intervenor claimants in this civil in rem forfeiture case, 21 U.S.C. § 881(a)(7) contend that the government was not "substantially justified" in seeking forfeiture of their two-thirds interest in certain real estate on which marijuana plants were being cultivated. Subsequent to the seizure and the filing of a complaint, the government dismissed its claims against their interest; the claimants now move for an order granting attorneys' fees and expenses, pursuant to 28 U.S.C. § 2412. For reasons which follow, the motion is denied.

## I.

"[T]he property consists of approximately sixteen acres located on a point that forms the northern channel of New Harbor on Block Island and contains three separate buildings: a main house, a cottage, and a pumping house." Claimants' brief. It was jointly owned by Peter, Joel and Carol Beane. Joel and Carol live out of state; they visit and use the property only as a vacation spot for a few weeks in the summer. Peter Beane resides there in the summer.

In a Memorandum and Order dated December 5, 1990, I concluded that the government presented proof of probable cause to believe that the defendant property was subject to forfeiture in accordance with 21 U.S.C. § 881(a)(7) and granted the government's motion for summary judgment under Fed.R.Civ.P. 56.[1] The facts premising the forfeiture are as I stated in the order: "[t]he instant case began when, in 1988, a juvenile reported that he observed marijuana growing on the defendant property. Moreover, the juvenile asserted that he had harvested marijuana from the field without permission and that this conduct lead to threats from the claimant, Peter Beane. The juvenile also reported that 'it was Beanes [sic] habit to cultivate marijuana every summer.' ... On the basis of this information, the police conducted two 'fly-overs' of the property; one on August 9, 1989 and the other on September 5, 1989. William Helm, a member of the Scituate Police Department and a 'trained observer in aerial surveillance for the purpose of detecting the growing of [m]arijuana, observed what appear[ed] to be marijuana growing ... [on the defendant property].' ... On the basis of this information a [state] search warrant for the property was obtained."

On September 5, 1989, the search warrant was executed. During the search, 385

---

1. After reconsideration, at a hearing on the merits on May 13, 1991, I reaffirmed my original conclusion.

marijuana plants were seized and the police observed a garden hose running from a small house just off the main house to two fields with 97 and 115 marijuana plants, respectively. In total, 385 marijuana plants were growing in twelve separate fields. At approximately 6:05 p.m. that evening, Peter Beane was arrested and charged with the cultivation of marijuana.

On October 23, 1989, a federal seizure warrant was issued by U.S. Magistrate Judge Jacob Hagopian; he found that there were "sufficient facts and circumstances to support the probable cause standard to believe that the [defendant] property was used to commit a violation of Title 21, United States Code, punishable by more than one year imprisonment.... Upon execution of said warrant by the Drug Enforcement Administration ('DEA') the agents found Peter Beane in the small house on the property. Beane executed a consent to search form. In the house the agents found a small quantity of marijuana, marijuana seeds and photographs showing Beane surrounded by marijuana plants." Memorandum and Order of December 5, 1990 at 4.

The procedural events leading to the present controversy were as follows:

1) August 9, 1989: state agents flew over the property.

2) September 5, 1989: a state search warrant was issued and served. The warrant indicated Peter and Carol Beane owned the property.[2] Police seized 385 marijuana plants from the property.

3) October 23, 1989: the United States applied for a Seizure Warrant/Writ of Entry; this was granted and it authorized a seizure of the property. Joel and Carol Beane received no notice of this seizure.

4) November 1, 1989: a Complaint for Forfeiture in Rem was filed and a Warrant of Arrest and Notice in Rem issued; this warrant commanded the marshal to "arrest, attach, and retain" the property at issue and to personally serve all persons claiming any interest therein ordering that such persons file their claims within ten days after the execution of the warrant and serve their answers within 20 days. The warrant also provided for notice by publication in the newspaper if the property was not released within 10 days, informing possible claimants of the procedure for filing any claims to the property. The complaint and warrant were properly served on all parties.

The affidavits accompanying the application for seizure described the property by metes and bounds and recited the owners to be Peter F. Beane, Carol A. Beane, and Joel W. Beane. In due course, Carol, Joel and Peter Beane filed claims for their one-third interests. The government pressed for forfeiture only as against Peter Beane's interest.

5) December 5, 1990: I granted the government's forfeiture motion for summary judgment against Peter Beane's interest.

6) December 12, 1990: a settlement stipulation was filed dismissing any claims by the government against the interests of Carol and Joel Beane in the property and restoring their full two-thirds property interest in the land.

7) May 13, 1991: as I stated, *supra* note 1, I reaffirmed my original conclusion regarding Peter Beane's interest in the property.

## II.

28 U.S.C. § 2412 justifies a fee award to a prevailing party (the government does not challenge that the claimants are prevailing parties) unless "the position of the United States was substantially justified or that special circumstances make an award unjust." "Substantial justification" has been definitively established by the United States Supreme Court in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). To be "substantially justified" there must be a "reasonable basis in law and fact" and the government must be "justified to a degree that could

---

**2.** Information that marijuana was being cultivated on the property had been received by the police one year prior to the application of the search warrant.

satisfy a reasonable person." *Id.* 108 S.Ct. at 2550. In *McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468 (1st Cir.1989), the First Circuit, citing to *Underwood* went on to explain "which 'government positions' had to be 'substantially justified' in order to preclude" an award. *Id.* at 1475. It held that the "position of the United States" means that both the government's litigating position and the underlying government action needed to be justified. *Id.* at 1476. As set forth, *supra,* in my Memorandum and Order dated December 5, 1990, I found there was probable cause to believe that the property was subject to forfeiture. The claimants cannot contest this but they do challenge the government's prosecution of the forfeiture.[3] They claim: that the Beanes were entitled to a pre-seizure notice or opportunity to be heard since there was an absence of exigent circumstances; that due to such failure, the government's position was not substantially justified in "light of the information available to it at the time" and thereby their property was taken without affording them procedural due process in violation of the Fifth Amendment; that it was an unreasonable seizure under the Fourth Amendment; and that the government's action was so cruel and unusual as to violate the Eighth Amendment.

*Procedural Due Process*

Ineluctably a property interest is at stake; the deprivation of such an interest carries with it the mandate of due process. The constitutional question centers on what process is due the claimants.

In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985), the Supreme Court stated:

An essential principle of due process is that a deprivation of life, liberty or property "be preceded by notice and opportunity for a hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original); *see Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. [564] 569–70, 92 S.Ct. [2701] 2705 [33 L.Ed.2d 548 (1972)]; *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972).

Thus, the question here is whether due process was violated in not affording the claimants a pre-seizure notice and hearing. If this is answered affirmatively, the government was not "substantially justified"; on the other hand, if due process has not been denied, then the question is whether the criteria to satisfy substantial justification, set forth *supra,* has been met.

In considering pre-seizure notice as it may be required by the Fifth Amendment, some courts have used the standards articulated by the Supreme Court in *Fuentes v. Shevin*, 407 U.S. 67, 80–82, 92 S.Ct. 1983, 1993–95, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25

---

**3.** The claimants, in their brief on the fee issue, now note their reliance on probable cause arguments advanced by Peter Beane in his motion for reconsideration of the summary judgement granted on December 5, 1990. However, when the motion for summary judgement against Peter Beane's interest was originally before this Court, Carol and Joel Beane specifically rejected this Court's invitation to respond to the motion, stating that, "Carol and Joel Beane take no position on the government's Motion For Summary Judgement, which is directed solely against co-

defendant Peter K. Beane's one-third interest in the defendant real property. Because Carol Beane's and Joel Beane's claims and defenses will not be affected by any decision (one way or the other) on the Motion For Summary Judgement against Peter K. Beane, these defendants do not intend to submit any substantive response at this time." Response to Government's Motion for Summary Judgement (Dec. 4, 1990). Carol and Joel Beane have thus waived any probable cause argument.

L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.*, 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969). Tersely stated, these cases held that only an "extraordinary situation" will justify postponing notice and opportunity for hearing. *Fuentes*, 407 U.S. at 90, 92 S.Ct. at 1999. An unusual situation depends on three factors:

> First, [whether] the seizure has been directly necessary to secure an important governmental or general public interest. Second, [whether] *there has been a special need for very prompt action.* Third, [whether] the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.
>
> *U.S. v. Property at 4492 South Livonia Road*, 889 F.2d 1258, 1263 (2d Cir.1989) (emphasis in original) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 91, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972)).

Considering each of these factors, I find that as to the first, the governmental and public interest to combat the pervasively nefarious drug trade cannot be debated. The third, like the first, does not lend itself to any reasonable argument. The breadth of the statute[4] cannot be questioned; it is narrowly tailored to forfeitures of property that facilitate illegal transactions of controlled substances. As to the second criteria, however, it may be argued that there was no "special need for very prompt action."

In *Livonia Road*, the court focused "on whether the statute as applied to the forfeiture of real property containing a claim-

ant's home, under all the facts and circumstances of [the] case, afforded appellant all the process due him." *Id.* at 1262. Its opinion points out that only extraordinary circumstances justify the absence of a pre-seizure hearing and that this requirement is applicable to a civil in rem forfeiture proceeding. In addition, the court noted that an extraordinary situation justifying postponement of notice and hearing until after seizures existed when property can be removed, destroyed or concealed—that is to say, when exigent circumstances exist. So argue the claimants here. The claimants emphasize that lis pendens could well have protected the government's interest in this real estate.

This is an appealing argument and one the Second Circuit accepted albeit the court found that any unconstitutionality with regard to notice did not undermine the seizure itself. However, the *Livonia* reasoning is called into question, if not entirely negated, by such First Circuit Court cases as *U.S. v. 250,000 in United States Currency*, 808 F.2d 895 (1st Cir.1987); *In re Warrant to Seize One 1988 Chevrolet Monte Carlo*, 861 F.2d 307 (1st Cir.1988); *U.S. v. One Parcel of Real Property*, 921 F.2d 370 (1st Cir.1990); and *Goichman v. City of Aspen*, 859 F.2d 1466 (10th Cir. 1988).

In *$250,000*, the government sought forfeiture of $250,000 that the defendant had posted as bail pending his appeal from a criminal conviction under federal drug laws. Not unlike this case, there was no fear the res could be dissipated. And, as in this case, I assume the obvious—no pre-seizure hearing was held; the hearing that did occur was on the complaint, as was available to the claimants in this case. The First Circuit stated:

---

4. 21 U.S.C. § 881(a)(7):
   (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
     *   *   *   *   *   *
   (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner

   or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of any owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

[T]he government must initially show probable cause to believe that the property was connected with illegal drug transactions. Once probable cause is shown, the private claimant bears the burden of proving by a preponderance of the evidence that the property was not involved in illegal drug transactions.

808 F.2d at 897.

Be this as it may, the claimants contend, relying on *Application of Kingsley*, 802 F.2d 571 (1st Cir.1986), that a pre-seizure notice was mandated. Such reliance is misplaced. In *1988 Chevrolet Monte Carlo, supra,* the court stated that because *Kingsley* antedated the enactment of the Anti–Drug Abuse Act of 1986 ("ADAA") that court's interpretation of the statute was no longer valid. 861 F.2d at 311. The ADAA added a provision to the forfeiture statute allowing that seizure warrants may be obtained by the Attorney General in the same manner as search warrants. It was this "new procedure" that was followed in the instant case.

*1988 Chevrolet Monte Carlo, supra,* really ends the matter, for it not only states that the government may request a seizure warrant but it also states that, "[a]t least where, as here, probable cause has been shown to a judicial officer at the outset, nothing in the federal Constitution, the relevant statutes, or the caselaw of this Circuit thwarts the implementation of this procedure according to its unwarranted terms and forthright tenor." *Id.* at 312.

The claimants fail to appreciate that this is an in rem action against the land and not against them personally. Before a final forfeiture is consummated, the owners of the forfeitable property must be notified and given an opportunity to dispute the government's contentions and defend their interest. This requirement is satisfied by the service of the complaint and the hearing thereon which ultimately follows. Certainly a person's home is the quintessential exemplar of privacy, not to be seized summarily. The procedures mandated by the statute [5] provide ample protection against arbitrary action, at least as applied to this case. The claimants have lost nothing by lack of a personal pre-seizure notice. Claimants were never evicted. Thus, their relationship with the property was impaired no more than it would have been had a lis pendens been solely relied upon. After service of the complaint, they pressed for the protection of their interests and they were successful—the government dismissed all claims it had against their interests. The process due the claimants was satisfied.

*Substantial Justification for the Government's Action*

As I stated, *supra,* the government must be substantially justified in both the underlying government action and in its litigation position. With regard to the government action, there was probable cause and the proper procedures were followed. The litigation position of the government was, therefore, not only reasonable, but correct. The government validly asserted the legitimacy of its conduct.

I must, therefore, conclude that the government was substantially satisfied in this case. The claimants' motion for attorneys' fees is denied.[6]

So Ordered.

---

5. Cases of this kind require the filing of a forfeiture complaint setting forth "sufficient factual particulars to support a reasonable belief ... that the government, at trial, can demonstrate probable cause," *U.S. v. One Parcel of Real Property, supra,* at 377, that the property was used to commit or facilitate a violation of the controlled substance statute. The claimants are given an opportunity to frame a responsive pleading and then have a hearing.

6. I say "in this case" because in a different factual setting the procedures discussed in this opinion could possibly be subject to a due process challenge for lack of a personal pre-seizure notice.