**UNITED STATES, Plaintiff, Appellee,**

**v.**

**ONE PARCEL OF REAL PROPERTY, etc., Defendant, Appellant,**

**Appeal of Carmela SCLAFANI and Rosario Sclafani, Claimants.**

**No. 89–1571.**

United States Court of Appeals, First Circuit.

Heard Feb. 6, 1990.

Decided April 11, 1990.

John C. McBride, with whom Thomas Kerner and McBride, Wheeler and Widegren, Boston, Mass., were on brief, for appellants.

Jeffrey S. Robbins, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BOWNES, Senior Circuit Judge.

This is an appeal from a grant of summary judgment in favor of the United States resulting in an order forfeiting property of claimants Rosario and Carmela Sclafani, husband and wife, to the United States. The property is the home of the Sclafanis; it consists of land and buildings located at 141 Bell Rock Street, Everett, Massachusetts.

## I. THE FACTS

The United States instituted a forfeiture proceeding against the Sclafanis' property pursuant to 21 U.S.C. § 881(a)(7) (1988).[1] The complaint *in rem* for forfeiture alleged:

> That as indicated by the Affidavit of Joseph W. Coons, attached and incorporated as Exhibit B, the defendant real property with the building, appurtenances, and improvements, was used or intended to be used to commit, or to facilitate the commission of, violations of Title 21 of the United States Code, the Controlled Substance Act; namely 21 U.S.C. §§ 841(a)(1) and 846, in that the defendant real property was used by Rosario Sclafani and Carmela Sclafani, in at least 1987, to unlawfully store, conceal, possess, prepare and distribute quantities of cocaine, a controlled substance.

The affidavit of Joseph W. Coons states that he is a special agent of the Drug Enforcement Administration (DEA); that he has had extensive experience relative to

cocaine trafficking; and that on September 8, 1987, police officers of the Everett, Massachusetts Police Department executed a search warrant at the Sclafanis' property. We quote the most important parts of the affidavit.

> I am informed by Detective Cook that, on September 8, 1987, at 9:00 p.m., Carmela M. Sclafani admitted Detective Cook and the others to 141 Bell Rock Street after Detective Cook identified himself as a [sic] Everett police detective.

> Rosario Sclafani, husband of Carmela Sclafani, was present in the residence at the time of the search. When Rosario learned that the detectives had a search warrant, and as Lt. Chambers started up the stairs to the second floor of the house, Rosario quickly went to a bedroom on the second floor.

> Rosario Sclafani soon after rushed past Lt. Chambers at the top of the stairs and into the bathroom where Rosario threw several plastic bags, each containing a white powdery substance, into the toilet and then flushed it. Lt. Chambers was able to salvage five small bags from the toilet bowl before the bags were lost.

> At the same time, Carmela Sclafani went to the second floor bedroom and removed a large white plastic bag from the top of a dresser. Detective Bontempo was able to seize the plastic bag before Carmela could conceal it under her dress. The bag contained three large cellophane bags, each containing a white powdery substance. The total weight of the cellophane bags was approximately one pound. Detective Bontempo also seized a smaller cellophane bag from the top of a dresser in the bedroom. The

---

**1.** 21 U.S.C. § 881(a)(7) provides:
   **(a) Subject Property**
   The following shall be subject to forfeiture to the United States and no property right shall exist in them:
   (7) All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any

manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

bag contained 14 packets of white substance wrapped in white paper.

The Everett police also seized U.S. currency from various parts of the residence: $11,990 from the top drawer of the dresser in the second floor bedroom, $1,144 from the top drawer of a night stand next to the bed in the same bedroom and $710 from a hutch in the dining room. The total amount of U.S. currency seized from the residence was $13,884.

From 141 Bell Rock Street, the Everett police also seized an Ohaus triple beam balance scale which, I know from my experience as a special agent, is commonly used in association with cocaine trafficking; a four-ounce bottle of Inositol powder commonly used to dilute cocaine powder; five handguns, one .22 cal. rifle, one Mossberg 12 gauge pump shotgun, and one Ruger single six .22 cal. revolver, the serial number of which was obliterated. In addition, the detectives seized various documents, papers, records and books.

On September 9, 1987, Carmela and Rosario Sclafani were arrested and charged with cocaine trafficking. Rosario was also charged with possession of an illegal firearm.

The bags of white powder seized were analyzed by the Massachusetts Department of Public Health; each bag tested positive for cocaine.

On the same day that the warrant was executed, September 8, 1987, the Sclafanis were arrested and charged under state law with cocaine trafficking. On August 19, 1988, the United States filed the forfeiture complaint against the Sclafanis' property. On September 26, 1988, Rosario Sclafani pled guilty in state court to possession of more than 100 grams of cocaine with intent to distribute; Carmela pled guilty to possession of cocaine with intent to distribute. The next day, September 27, service of the forfeiture complaint was made on the Sclafanis.

## II. THE ISSUES

In granting summary judgment for the government the district court ruled that the affidavits of DEA Agent Coons and Everett police officer David Cook "as well as the record of claimants' convictions" established probable cause to believe that there was a substantial connection between the claimants' property and drug trafficking, and hence that the property was subject to forfeiture. *See United States v. $250,000 in United States Currency,* 808 F.2d 895, 897 (1st Cir.1987) (In forfeiture actions under 21 U.S.C. § 881, "the government must initially show probable cause to believe that the property was connected with illegal drug transactions. Once probable cause is shown, the private claimant bears the burden of proving by a preponderance of the evidence that the property was not involved in illegal drug transactions."). The court ruled that the Sclafanis' pleas of guilty in state court collaterally estopped them "from relitigating the issues litigated and disposed of in their criminal case, the possession with intent to distribute cocaine." We note that the district court evidently treated the guilty pleas as the equivalent of litigating the issues. The district court further held that the affidavits of the two law enforcement officers were sufficient to establish probable cause, even without reference to the convictions of claimants.

The government posits three grounds on which the district court can be affirmed. One, that the state court guilty pleas collaterally estop the Sclafanis from denying in the federal forfeiture case that they used their property for the possession of cocaine with intent to distribute it. Two, that even without the benefit of collateral estoppel there was no genuine issue of material fact and the United States was entitled to summary judgment. Three, that the failure of the Sclafanis to comply with Rule 18 of the District Court of Massachusetts warrants summary judgment for the government.

Appellants argue that the government did not prove, as required in a forfeiture action, that there was a substantial connection between their property and drug trafficking. They contend that the guilty pleas do not establish such a connection. Appellants also urge that the undisputed evi-

dence, viewed in the light most favorable to them, does not support the government's claim that their home was used to store and distribute cocaine and that this is a genuine issue of material fact that must be resolved by a trial.

### A. *Collateral Estoppel*

■ We start our analysis with a statement by the Supreme Court in *Haring v. Prosise*, 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983): "Title 28 U.S.C. § 1738 generally requires 'federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.' *Allen v. McCurry*, 449 U.S., at 96, 101 S.Ct. at 415.[6]" Note 6 reads: "If the state courts would not give preclusive effect to the prior judgment, 'the courts of the United States can accord it no greater efficacy' under § 1738. *Union & Planters' Bank v. Memphis*, 189 U.S. 71, 75 [23 S.Ct. 604, 606, 47 L.Ed. 712] (1903)." Our next stop is *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980):

> Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so:
>
> > "[J]udicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...."
> >
> > 28 U.S.C. § 1738.
>
> *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 193 [61 S.Ct. 513, 517, 85 L.Ed. 725]; *Davis v. Davis*, 305 U.S. 32, 40 [59 S.Ct. 3, 6, 83 L.Ed. 26].

Pursuant to this clear and unmistakable command, we turn to the law of Massachusetts to determine what effect is to be given the claimants' guilty pleas. This question was fully discussed in *Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356 (1985). The Supreme Judicial Court held that "a plea of guilty is admissible in evidence as an admission in subsequent civil litigation." *Id.* 481 N.E.2d at 1363 (footnote omitted). The court then focused on the collateral estoppel effect of a guilty plea in subsequent civil litigation:

> When a conviction is entered after a plea of guilty, "no issue [is] 'actually litigated' ... since [the defendant] decline[s] to contest his guilt in any way." *Haring v. Prosise*, 462 U.S. 306, 316, 103 S.Ct. 2368, 2374, 76 L.Ed.2d 595 (1983). Therefore, the doctrine of collateral estoppel does not apply to preclude the former criminal defendant from litigating in subsequent civil litigation issues involved in the criminal proceeding in which he pleaded guilty.

*Id.* Under the teachings of the United States Supreme Court and the holding of the Massachusetts Supreme Judicial Court in *Niziolek*, it is pellucid that the guilty pleas of claimants should not have been given collateral estoppel effect by the district court; they could be treated as admissions only in any subsequent civil litigation.

### B. *Summary Judgment—The Affidavits*

■ The next question is whether the government was entitled to summary judgment as a matter of law under Fed.R.Civ.P. 56(c) because there was "no genuine issue as to any material fact." Rule 56(e) also comes into play; it states in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The procedure to be followed and the standards that apply have been prescribed by the Court. The moving party must

show (point out to the district court) "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). If that is done, then the party opposing summary judgment must show that "a reasonable jury could return a verdict" for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court explicated: "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted). We have stated the non-movant party's burden as follows: "The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial." *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989); *see also Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989); *Thomas v. Digital Equipment Corp.*, 880 F.2d 1486, 1489 (1st Cir.1989).

With these teachings in mind we turn to the affidavits, which we view in the light most favorable to the claimants. *Thomas*, 880 F.2d at 1489; *Rossy v. Roche Products, Inc.*, 880 F.2d 621, 622 (1st Cir.1989).

The government filed two affidavits in support of its motion for summary judgment; one by DEA Agent Coons and the other by the police officer from whom Coons obtained his information, Detective Cook. We have already quoted the pertinent parts of Coons' affidavit. Cook's affidavit substantiates and corroborates that of Coons. It states that the following items were seized from the claimants' property: [2]

   a. Approximately 23 separately packaged quantities of cocaine with a to-

tal combined weight of approximately 582.23 grams;

   b. a bottle of Inositol diluent powder and an Ohaus Triple Beam balance scale, two items commonly used to prepare, weigh and package cocaine; and

   c. thirteen thousand eight hundred and forty-four dollars ($13,844.00) in U.S. currency.

Cook further stated:

During the search of the 141 Bell Rock Street premises, both Carmela Sclafani and Rosario Sclafani were observed to have large quantities of cocaine in their possession and they were caught attempting to conceal or dispose of cocaine that had been stored on the premises. I personally observed 14 small packets of cocaine on the dresser in Carmela Sclafani's bedroom and a large bag of cocaine (approx. 563.96 grams) that was taken from Carmela Sclafani by Detective Robert Bontempo after she entered her bedroom.

The government's affidavits, without considering the guilty pleas, certainly established a substantial connection between claimants' property and drug trafficking. They also made a *prima facie* showing for summary judgment.

The next question is whether construed singly or collectively, the affidavits of the claimants raise a "genuine issue as to any material fact," Fed.R.Civ.P. 56(c), as that phrase has been interpreted by the Court.

The pertinent parts of Rosario Sclafani's affidavit state:

2. Carmela Sclafani and I are joint tenants in the entirety of our residence, the defendant property known as 141 Bell Rock Street, Everett, Massachusetts.

3. Prior to September 8, 1987, I did not know that there were any drugs being kept at my residence....

7. Subsequent to September 8, 1987, I have learned that the cocaine that was

---

2. No mention is made in Cook's affidavit of the firearms seized on the premises and described in Coons' affidavit. The last paragraph of Cook's affidavit states, however, that he has read Coons' affidavit and that its contents "are true to the best of my knowledge." Appellants have not challenged either before us, or below, the accuracy of Coons' affidavit relative to the firearms seized.

discovered in my bedroom was placed there and brought into my home by my son Sam.

8. Sam had spent the prior night at my home while awaiting the birth of his child.

9. Sam has a severe drug problem.

10. The drugs that were found in my residence were all found in one room; The room in which I alone slept, due to a medical condition.

Carmela Sclafani's affidavit states in pertinent part:

2. Rosario Sclafani and I are joint tenants in the entirety of our residence, the defendant property known as 141 Bell Rock Street, Everett, Massachusetts.

3. Prior to September 8, 1987, I did not know that there were any drugs being kept at my residence. . . .

6. I never knowingly allowed cocaine to be stored at my residence.

7. On September 8, 1987, I did not attempt to conceal a large plastic bag of cocaine under my dress.

In examining the claimants' affidavits, we are struck, not only by what is stated, but by what is not stated. The claimants neither deny the amount of cocaine seized on their premises nor dispute the number of containers (23) in which the cocaine was packaged. Rosario Sclafani does not deny that he attempted to flush a quantity of cocaine down the toilet. The claimants do not deny that three firearms, a .22 caliber rifle, one Mossberg 12 gauge shotgun and a Ruger revolver were seized from the premises. Guns are now recognized as part of the tools of the trade of drug dealers. *See United States v. Caggiano,* 899 F.2d 99, 103–04 (1st Cir., 1990). Nor do the claimants dispute that other tools of the drug trade were seized from their premises: an Ohaus triple beam balance scale and a bottle of a cocaine cutting agent, Inositol. And there is no mention of the currency seized in either affidavit.

Rosario Sclafani's affidavit states that prior to September 8, 1987, he did not know there was any cocaine on the premises. He states that subsequent to September 8, he learned that the cocaine discovered in his bedroom was brought there by his son Sam who "has a severe drug problem." It is not suggested that Sam lived in the premises, only that he spent the night of September 7 there. Rosario states that all the drugs seized were found in his bedroom. No explanation is given as to how 23 packets of cocaine could have been brought into Rosario's bedroom without his knowing it. Rosario's affidavit, as already noted, does not mention the guns, the scale, the cocaine cutting agent or the currency seized. Rosario's son Sam may be a heavy drug user as the affidavit states, but the evidence seized at the premises indicates that the owner (or owners) was a drug dealer carrying on an active business.

Carmela Sclafani's affidavit is even more skimpy on factual details than that of her husband. She simply denies any knowledge of cocaine being kept on the premises, states that she never knowingly allowed cocaine to be stored on the premises and denies that she attempted to conceal a large bag of cocaine in her dress. We realize, of course, that the last statement raises a question of credibility, but Carmela did not deny that a large plastic bag containing three small bags of cocaine was seized from her.

We find that the affidavits, considered either singly or collectively, did not "set forth specific facts showing that there [was] a genuine issue for trial." Fed.R. Civ.P. 56(e). To suggest, as Rosario Sclafani did in his affidavit, that the items seized were brought on the premises by his son, without the claimants' knowledge, is ludicrous. Moreover, if there were a trial, the pleas of guilty would be admitted as admissions. Although the claimants could assert that the pleas were the result of an advantageous plea bargain, they could not, within the parameters of the affidavits filed by the government and themselves, persuade a reasonable jury that they had no knowledge that there was a quantity of saleable cocaine on the defendant property, along with the tools of a drug dealer's trade, plus sufficient currency to show that

an active drug business was being conducted on the premises.[3]

For the reasons stated, we uphold the grant of summary judgment on the forfeiture complaint.

---

**3.** We find it unnecessary to reach the government's argument based on Local Rule 18.