**UNITED STATES of America, Plaintiff,**

v.

**CERTAIN REAL PROPERTY LOCATED ON HANSON BROOK, TOWN HOUSE ROAD, WATERBORO, COUNTY OF YORK, STATE OF MAINE, et al., Defendants,**

**Patrick Cunan, Claimant.**

**No. 91–0110–P.**

United States District Court,
D. Maine.

July 23, 1991.

Jonathan R. Chapman, Asst. U.S. Atty., Portland, Me., for plaintiff.

Bruce E. Kenna, Kevin E. Sharkey, Kenna, Johnston, Craighead & Sharkey, Manchester, N.H., Terrence Garmey, Smith & Elliott, Portland, Me., for Prestige Precious Metal, Inc. and for Claimant Patrick Cunan.

MEMORANDUM OF DECISION AND ORDER ON CLAIMANT'S MOTION TO DISMISS COMPLAINT AND MOTION TO DISMISS WARRANT OF SEIZURE

GENE CARTER, Chief Judge.

Plaintiff United States of America's Verified Complaint seeks the forfeiture of De-

fendants[1] pursuant to 18 U.S.C. section 981 and 21 U.S.C. section 881(a)(6).[2] Plaintiff alleges that Defendants are properties involved in transactions which violate 18 U.S.C. sections 1956[3] or 1957.[4] Claimant Patrick Cunan offers a motion to dismiss Plaintiff's Verified Complaint for failure to satisfy the applicable particularity requirements. Claimant also offers a motion to dismiss the *ex parte* seizure warrants issued by United States Magistrate Judge William S. Brownell on March 22, 1991 and the arrest warrants *in rem* signed by a Deputy Clerk of Court on March 29, 1991.

## I. PARTICULARITY

■ Forfeiture complaints are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims. 21 U.S.C. § 881(b); *United States v. Certain Real Property at 1 Hanson Avenue*, 738 F.Supp. 580, 581 (D.Me.1990) (Carter, C.J.). Supplemental Rule E(2)(a) requires that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." The Court of Appeals for the First Circuit, elaborating on Rule E(2)(a), explained that "the complaint need not allege facts sufficient to support a 'reasonable belief that specific property is tainted,' but facts sufficient to support 'a reasonable belief that the government could demonstrate *probable cause*' for finding the property tainted." *United States v. One Parcel of Real Property*, 921 F.2d 370, 376 (1st Cir.1990) (emphasis in original) (citation omitted). The First Circuit defines "probable cause" to be a " 'reasonable ground for belief of guilt; supported by less than prima facie proof but more than mere suspicion.' " *United States v. $250,000 in United States Currency*, 808 F.2d 895, 897 (1st Cir.1987) (quoting *United States v. $364,960*, 661 F.2d 319, 323 (5th Cir.1981)). Plaintiff may satisfy this burden with any reliable evidence, including circumstantial evidence, regardless of its admissibility at trial.

1. Defendants are four properties: (1) Certain Real Property located on Hanson Brook, Town House Road, Waterboro, County of York, State of Maine (hereinafter Defendant # 1); (2) Certain Real Property Consisting of 4.36 Acres located on the Town House Road, Waterboro, County of York, State of Maine (hereinafter Defendant # 2); (3) Certain Real Property located at Lake Arrowhead Estates, Old Portland Road, Waterboro, County of York, State of Maine (hereinafter Defendant # 3); (4) Certain Real Property located on the Beaverberry Road, Limington, County of York, State of Maine (hereinafter Defendant # 4).

2. A verified complaint was filed on September 17, 1990 seeking the forfeiture of Defendants on essentially the same grounds as those set forth in the present Verified Complaint. That complaint was dismissed without prejudice by this Court on the narrow grounds that Plaintiff had failed to respond to Claimant's motion to dismiss in a timely manner and in the form required by Local Rule 19. *See United States v. Certain Real Property in Waterboro*, Docket No. 90–0224–P, slip op. (D.Me. Feb. 6, 1991) (Carter, C.J.) (Order Granting Claimant's Motion to Dismiss).

3. Title 18 U.S.C. section 1956 reads, in pertinent part:
   (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
   (A)(i) with the intent to promote the carrying on of specified unlawful activity; or
   (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
   (B) knowing that the transaction is designed in whole or in part—
   (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
   (ii) to avoid a transaction reporting requirement under State or Federal law.
   shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

4. Title 18 U.S.C. section 1957 reads, in pertinent part:
   (a) Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a greater value than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).

*United States v. Parcels of Land,* 903 F.2d 36, 38 (1st Cir.1990).

■ Plaintiff's burden does not necessitate tracing Defendants to specific drug transactions. *Id.* The Court may "approach the forfeitability determination with a view to the 'aggregate of facts,' according due account to 'common experience considerations.'" *One Parcel of Real Property,* 921 F.2d at 376 (quoting *$250,-000 in United States Currency,* 808 F.2d at 899). For example, probable cause that an individual derived money to purchase property from drug trafficking may be inferred from a history of drug trafficking, the absence of any apparent legitimate source for the money, and a suspicious method of payment for the property. The government need not exclude all other plausible hypotheses of the money's source. *$250,000 in United States Currency,* 808 F.2d at 899.[5] Plaintiff's Verified Complaint must, therefore, contain sufficient facts to support a reasonable belief that the Plaintiff could establish, at trial, probable cause that Defendants are either (1) proceeds traceable to "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance," 21 U.S.C. § 881(a)(6), or (2) proceeds of specified unlawful activity. 18 U.S.C. §§ 981(a)(1)(A), 1956(a)(1), 1957(a).

## A. DeCato's Drug Trafficking

■ Plaintiff's Verified Complaint incorporates the Affidavit of David Nicholson (hereinafter Affidavit), a special agent with the Criminal Investigation Division of the Internal Revenue Service. The Affidavit describes and identifies evidence which establishes the following relevant facts. Richard DeCato Jr., has been involved for ten years in a drug trafficking conspiracy originally based in Lowell, Massachusetts (hereinafter Lowell conspiracy). The Lowell conspiracy sold tens of thousands of pounds of marijuana and hundreds of kilograms of cocaine. Sixteen people associated with the Lowell conspiracy have plead guilty to drug charges or drug-related tax charges.

The Manchester, New Hampshire police executed a search of DeCato's home in Manchester on April 21, 1981. They seized twenty-one pounds of marijuana, stolen property, and a scale. DeCato was charged with possession of stolen property and possession of a controlled drug based on this evidence and a signed statement from another defendant who said that DeCato had given him marijuana in trade for stolen property in 1981. The Manchester police searched DeCato's home again on August 31, 1982 and found thirty-seven pounds of marijuana, a box of bullets, syringes, hashish, a scale, and silver coins. The police also searched two storage spaces. DeCato rented one space and had access to the second. The search yielded additional marijuana and numerous scales. As a result of these searches, DeCato was charged with possession of a controlled drug with intent to sell, possession of a controlled drug over one pound, and possession of hypodermic needles. DeCato defaulted on these charges and was a fugitive from 1982 until his recent arrest.[6]

**5.** Claimant cites recent First Circuit authority for the proposition that Plaintiff must establish the existence of a "substantial connection" between Defendants and the drug or money laundering activities which have been alleged. *See United States v. Parcel of Land & Residence at 28 Emery Street,* 914 F.2d 1, 3–4 (1st Cir.1990); *United States v. One Parcel of Real Property,* 900 F.2d 470, 472 (1st Cir.1990). *See also $250,000 in United States Currency,* 808 F.2d at 897. Claimant is correct to the extent that these cases describe Plaintiff's burden *at trial.*

The particularity requirements governing Plaintiff's Verified Complaint, however, require only the provision of sufficient facts to support a reasonable belief that Plaintiff can demonstrate probable cause for finding a substantial connection between Defendants and drug or money laundering activities. As the text accompanying this footnote demonstrates, the First Circuit has made clear that direct evidence of a substantial connection between Defendants and drug or money laundering activities is not required.

**6.** All of this information was found either in the files of the Manchester Police Department or gleaned from conversations between the affiant and Deputy Police Chief Paul Brodeur.

The Affidavit also describes the statements of several witnesses and confidential informants who have assisted both with the investigation and prosecution of participants in the Lowell conspiracy and the preparation of several civil forfeiture actions associated with those prosecutions.[7] These witnesses confirmed that DeCato was engaged in large-scale drug trafficking. One informant described being hired by DeCato in 1984 to process and manicure multiple pounds of marijuana. This informant also related that DeCato was in Florida while he was a fugitive and that he transported and sold large quantities of cocaine. A second informant stated that DeCato had been selling kilograms of cocaine and bales of marijuana to New Hampshire drug dealers in 1989. DeCato also negotiated a deal in 1989 in which he would have supplied ammunition and over one hundred machine guns and M-16 rifles in return for six kilograms of cocaine.

The Court finds that the reliable evidence described above and the aggregate of facts set forth in the Affidavit support a reasonable belief that Plaintiff could establish probable cause that Richard DeCato engaged in large-scale drug trafficking between 1981 and 1989.

### B. DeCato's Aliases

DeCato was stopped for traffic violations by a Wells, Maine police officer while driving an Isuzu Trooper on August 10, 1990. DeCato gave the officer a Massachusetts driver's license in the name of "Patrick Cunan." DeCato also identified himself as Patrick Cunan. The driver's license had been suspended for prior traffic offenses. The officer arrested DeCato for driving with a suspended license. Two thousand dollars in cash was in plain view in the car. A search pursuant to a warrant yielded an additional $19,780 in cash, a semi-automatic pistol, a scale covered with marijuana residue, a money belt, an address book, and a

notebook. The address book and notebook contained the names of members of the Lowell conspiracy and notations of likely drug transactions, according to Agent Nicholson. In addition, the police found in DeCato's possession various forms of identification for Patrick Steven Cunan, John Handcock, R. Cunan, Richard J. Cunan, and Richard and Donna Buswell. DeCato signed the police and court documents in the name of Patrick Cunan. After being told that his fingerprints were being sent to the Manchester police, DeCato admitted that he was not Patrick Cunan[8] and accurately identified himself.

A Maine realtor (hereinafter Realtor #1) was engaged by "Richard Cunan" on March 28, 1990 to list and sell Defendant #1. Realtor #1 selected a picture of Richard DeCato from an array of photographs and said it was a picture of Richard Cunan. Realtor #1 said that DeCato identified himself as Claimant's brother, and the contractor who would be developing Defendant property. Another realtor (hereinafter Realtor #2) also reported dealing with a man who identified himself as Richard Cunan (DeCato). Realtor #2 similarly identified a photograph of Richard DeCato as the man who had identified himself as Richard Cunan. An Isuzu salesman made the same connection between Richard Cunan and Richard DeCato, as did the owner of the Blackburn Campground in Waterboro, Maine.

The Court finds that the reliable evidence described above and the aggregate of facts set forth in the Affidavit support a reasonable belief that Plaintiff could establish probable cause that Richard DeCato used a variety of aliases, including "Patrick Cunan" and "Richard Cunan," between 1981 and 1990.

### C. DeCato's Income and the Purchases of Defendants

A deed dated October 15, 1986 records the sale of Defendant #1 by John and

**7.** Agent Nicholson avers to the reliability and credibility of these witnesses and confidential informants in the Affidavit.

**8.** The Court concludes from the manner in which both parties have discussed this case that

there exists a "real" Patrick Cunan, who is the Claimant in this matter, in addition to Richard DeCato posing as Patrick Cunan. Unless otherwise noted, the Court will hereinafter refer to the "real" Patrick Cunan as "Claimant."

Estella Waterhouse to Prestige Precious Metals Inc. (hereinafter Prestige) for $47,000. No mortgage associated with this sale has been found. The address given for Prestige was Claimant's home address. A Town of Waterboro, Maine building permit was approved for "Patrick–Richard Cunan" on April 8, 1987 granting permission to build a log cabin on Defendant # 1. Realtor # 1 was given the exclusive right to sell Defendant # 1 for $300,000 in a written agreement dated March 28, 1990. The agreement is signed: "Prestige Precious Metals, Inc., By: Patrick S. Cunan." Realtor # 1 actually dealt with Richard DeCato, who claimed to be Claimant's brother. The Town of Waterboro tax records indicate that the August 1990 tax bill for Defendant # 1 was sent to Prestige Metals, c/o State Scale Co. Att: Patrick, 155 Bemis Road RFD 12, Manchester, NH 03102. Claimant is the owner of State Scale, and the address on the tax bill is State Scale's address.

A deed dated October 23, 1987 records the sale of Defendant # 2 by Derryl McPherson to Patrick S. Cunan for $34,000. No mortgage associated with this sale has been found. McPherson identified DeCato as the person to whom he had sold Defendant # 2 for $17,000 cash and a check from State Scale. A Town of Waterboro building permit granting permission to Claimant to build on Defendant # 2 was issued on February 16, 1989. Realtor # 1 was given the exclusive right to sell Defendant # 2 for $250,000 in a written agreement dated May 2, 1990 and signed "Patrick S. Cunan Sole Owner." The August 1990 tax bill for Defendant # 2 was sent to Claimant at State Scale's address.

A deed dated March 16, 1988 records the sale of Defendant # 3 by Stephen Jordan to "Patrick Kunan" for $12,000. No mortgage associated with this sale has been found. Realtor # 2 identified DeCato as the person who had actually purchased Defendant # 3. A contract for the sale of the property originally identified Richard Cunan as the purchaser. Richard Cunan's

(DeCato) name, however, was crossed out on the purchaser's line of the contract and replaced with Patrick S. Cunan. Nonetheless, the sales contract was signed by Richard Cunan (DeCato). Payment for the sale was made with a check from State Scale and a realtor's escrow account check payable to and endorsed by Richard Cunan (DeCato). Claimant applied for a building permit to erect a residence on Defendant # 3. The August 1990 tax bill for Defendant # 3 was mailed to Claimant at State Scale's address.

A deed dated April 28, 1989 records the sale of Defendant # 4 by Rodney and Pamela Small to Claimant for $116,000. No mortgage associated with this sale has been found. Rodney Small reported that a man who identified himself as Richard Cunan (DeCato), and claimed to be Claimant's brother, paid for the property with checks and cash. Four building permit applications were filed in March and August 1989 seeking permission to build or alter a residential building on Defendant # 4. One permit lists Richard Cunan (DeCato) as the contractor. A Subsurface Wastewater Disposal System Application for this property dated March 5, 1989 lists Donna and Richard Cunan (DeCato) as the property owners, although Claimant signed the application as the owner.[9] Realtor # 1 was given the exclusive right to sell Defendant # 4 for $198,000 in a written agreement dated May 2, 1990. The agreement was signed "Patrick S. Cunan Sole Owner." The June 1990 tax bill for Defendant # 4 was sent to Claimant at State Scale's address.

The Court finds that the reliable evidence described above and the aggregate of facts set forth in the Affidavit support a reasonable belief that Plaintiff could establish probable cause that Richard DeCato, using either his alias of Richard Cunan or Patrick Cunan, purchased and/or participated financially in the purchase of each Defendant.

Richard DeCato's tax returns for 1984, 1985, 1986, and 1987 all reported that he worked for State Scale as his only means

---

9. Agent Nicholson averred on personal knowledge that, in the 1980's, DeCato lived with and had children with a woman whose first name is Donna.

of support. The returns indicate that De-Cato's gross income was $52,714 in 1984, $45,000 in 1985, $47,000 in 1986, and $47,-000 in 1987. DeCato's 1988 tax return indicates that he earned a gross income of $45,000 from State Scale.[10] However, Manchester Deputy Police Chief Paul Brodeur interviewed Claimant in August 1990 about DeCato's employment. Claimant denied that DeCato had ever been employed by State Scale. Further, Claimant said that he had not seen or heard from DeCato in eight years, with the exception of one brief telephone call. In sum, DeCato has a history of drug trafficking and there is no apparent legitimate source of adequate funding for DeCato's purchases. The methods of payment for all four Defendants are suspicious because of the quantities of cash involved, the use of checks from State Scale, and the absence of any mortgages. The Court finds, therefore, that this reliable evidence supports a reasonable belief that Plaintiff could establish probable cause that Richard DeCato purchased or participated financially in the purchase of each Defendant using the proceeds of controlled substance transactions.

The Court concludes, based on the three foregoing findings, that Plaintiff's Verified Complaint, which incorporates the Affidavit, evinces sufficient facts to support a reasonable belief that Plaintiff could establish probable cause that Defendants are properties involved in transactions which violate 18 U.S.C. sections 1956 or 1957. Plaintiff has, therefore, satisfied the particularity requirement contained in Supplemental Rule E(2)(a). Accordingly, Claim-

ant's motion to dismiss Plaintiff's Verified Complaint will be denied.

## II. SEIZURE AND ARREST WARRANTS

Claimant makes three arguments supporting his motion to dismiss the seizure and arrest warrants: (1) the Due Process clause of the Fifth Amendment to the United States Constitution required a preseizure adversarial hearing, rather than an *ex parte* hearing, before the issuance of the seizure warrant; (2) the seizure and arrest warrants were not supported by probable cause; and (3) issuance of the arrest warrant by a Deputy Clerk of the Court rather than a judicial officer violated the Fourth Amendment. The Court will address these arguments serially.[11]

### A. Due Process

■ Relying on *United States v. Premises and Real Property at 4492 South Livonia Road*, 889 F.2d 1258 (2d Cir.1989), Claimant argues that a seizure warrant should not have issued in this case in the absence of notice and an opportunity to be heard.[12] *Livonia Road* is inapposite. *Livonia Road* held unconstitutional the absence of preseizure notice and an opportunity to be heard in the context of the *seizure of the claimant's home*. *Livonia Road*, 889 F.2d at 1264–65. The Court of Appeals for the Second Circuit made clear in a later case that seizure of *commercial or investment property* pursuant to a warrant obtained *ex parte* was not similarly constitutionally suspect. *United States v. 141st Street Corp.*, 911 F.2d 870, 874–76 (2d Cir.1990) (distinguishing *Livonia*

10. Agent Nicholson identified several suspicious elements of DeCato's 1988 tax return: (1) the amount of income is an unusually round number; (2) there is no evidence that DeCato ever worked as a salesman, although that is how DeCato described his employment on the returns; (3) DeCato claimed only a $250 deduction, while self-employed salesmen usually file numerous deductions; (4) DeCato did not pay any estimated taxes or withholdings during 1988.

11. Claimant failed to cite any rule or statutory provision upon which a motion for dismissal of either a seizure warrant or an arrest warrant

may be based. Claimant's filings discuss only the merits of his three arguments without giving a hint as to the proper procedural mechanism for reaching those merits. Nonetheless, the Court proceeds to the merits of Claimant's motion in the absence of any objection by Plaintiff that such a motion is unavailable or inappropriate at this stage of this case.

12. Claimant's constitutional challenge presupposes that the issuance of the seizure warrant was accomplished consistent with the governing statutes and rules. *See* 21 U.S.C. § 881(b); Fed. R.Crim.P. 41.

*Road)*, *cert. denied*, ——— U.S. ———, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991). *See also In re Application of Kingsley*, 802 F.2d 571, 580 (1st Cir.1986) (Coffin, J., concurring) ("due process does not permit the government to initiate forfeiture *of a home* by preindictment seizure without first affording the opportunity for an adversary hearing") (emphasis added); *New York v. Burger*, 482 U.S. 691, 700, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601 (1987) (expectation of privacy is less in a commercial property than in an individual's home). The present case involves investment properties, not Claimant's residence.

Establishing this factual distinction does not end the Court's constitutional inquiry. Plaintiff does not dispute that Claimant has a property interest in Defendants which is entitled to the protection of the Due Process clause.[13] There is also no dispute that Claimant may obtain post-seizure relief by pursuing his present claim in the manner required by the applicable statute. The question remains, however, whether the Fifth Amendment required preseizure notice and an opportunity to be heard.

Three factors must be balanced to determine the sufficiency of process under the Fifth Amendment: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens associated with the additional or substitute procedural safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 325, 96 S.Ct. 893, 898, 47 L.Ed.2d 18 (1976). First, although Claimant's interest in Defendants is not as significant as would be his interest in his home, Claimant retains a not insubstantial privacy interest even in these commercial investment properties. *See Connecticut v. Doehr*, ——— U.S. ———, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991) (procedures even temporarily or partially impairing property rights are sufficient to merit due process protection). Second, the procedure employed in this case—an *ex parte* hearing before a United States Magistrate Judge reviewing the evidence supporting a probable cause determination—significantly reduced the risk of erroneous deprivation. Nonetheless, an adversarial proceed-

**13.** In fact, Plaintiff's response to Claimant's constitutional argument is clearly premised on the assumption that Claimant has a property interest in Defendants which is protected by the Fifth Amendment. There is a substantial question, however, whether this assumption is correct.

Title 21 U.S.C. section 881 is facially unambiguous: "The following property shall be subject to forfeiture to the United States *and no property right shall exist in them....*" 21 U.S.C. § 881(a) (emphasis added). The Supreme Court, interpreting the criminal forfeiture analogue to section 881, observed that "§ 853(c) reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, *at the time of the criminal act giving rise to the forfeiture.*" *Caplin & Drysdale v. United States*, 491 U.S. 617, 627, 109 S.Ct. 2646, 2653, 105 L.Ed.2d 528 (1989) (emphasis added). *See also United States v. Real Property in South Portland, Maine*, 758 F.Supp. 772, 774 (D.Me.1991) (Carter, C.J.). The First Circuit explained further:

The traditional theory upon which [section 881] is based is that the property itself was guilty of wrongdoing and was 'tainted' because of its connection with the alleged offense.... So long as this taint existed, the

defendant, who was responsible for its creation, could not retain or acquire any interest in the property.

*United States v. Land and Building at 2 Burditt Street*, 924 F.2d 383, 385 (1st Cir.1991). Thus, the First Circuit viewed the subject property, prior to the time of forfeiture, as being " 'in a kind of limbo—belonging totally to neither the defendant nor the government.' " *Id.* (quoting *United States v. Kingsley*, 851 F.2d 16, 20 (1st Cir.1988).

The Court proceeds on the assumption that Claimant retains some constitutionally cognizable property interest in Defendants, in spite of the doubts raised by these authorities, principally because Plaintiff has not raised the issue of the constitutional status of Claimant's property rights in this proceeding. In addition, the Court is directed to construe statutes, whenever "fairly possible," in a manner which avoids questions of the statute's constitutionality. *United States v. Pappas*, 613 F.2d 324, 329 (1st Cir.1979). The Court is skeptical that a congressionally created "fiction" effectively eliminating otherwise valid property interests without judicial process meets with the requirements of the Fourth and Fifth Amendments. The Court therefore assumes, in the absence of developed argumentation to the contrary, that section 881 does not mandate such a result.

ing would have undoubtedly further reduced the risk of error: "'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.'" *Doehr*, 111 S.Ct. at 2114 (quoting *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170–72, 71 S.Ct. 624, 647–49, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). *See also Livonia Road*, 889 F.2d at 1265.

Third, Plaintiff's only interest in this case is the narrow interest of seizing Defendants before notice was given to Claimant. Assessing the importance of this interest requires determining whether this seizure is one of those "'extraordinary situations' that justify postponing notice and opportunity to be heard." *Fuentes v. Shevin*, 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972). Three factors must be present: (1) the seizure is directly necessary to secure an important governmental or general public interest; (2) there is a special need for very prompt action; and (3) the person initiating the seizure is a government official who is responsible for determining that the seizure was necessary and justified pursuant to a narrowly drawn statute. *Fuentes*, 407 U.S. at 91, 92 S.Ct. at 1991.

Plaintiff cannot satisfy the second prong of this *Fuentes* test. There was no danger that Defendants, unlike other forms of property, would be moved, destroyed, or concealed if preseizure notice was given. *See, e.g., Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974) (pleasure yacht could be moved).[14] Further, Plaintiff filed a *lis pendens* notice on each Defendant on March 22, 1990, the date on which the *ex parte* hearing was held and the Verified Complaint was filed. There was no danger at the time of the proceeding

and there continued to be no danger that Defendants would be alienated to defeat Plaintiff's claim against them. Plaintiff has failed to make a showing that preseizure notice would have rendered Defendants unavailable or less likely to be available for forfeiture. *Kingsley*, 802 F.2d at 580 (Coffin, J., concurring). The Supreme Court recently reaffirmed that, absent an exigent circumstance, a plaintiff's interest in encumbering property is not sufficient to justify burdening the owner's property rights without notice and an opportunity to be heard. *Doehr*, 111 S.Ct. at 2115. In sum, Claimant's privacy interest in Defendants and the added benefits of an adversarial preseizure hearing find no counterweight in Plaintiff's purported interest. Claimant was denied due process by the *ex parte* hearing which resulted in the issuance of the seizure warrants.

█ The Court's conclusion that the seizure warrant was unconstitutional does not, however, result in the dismissal of the seizure warrant. The proper remedy for the unconstitutional seizure of property in a forfeiture action is not dismissal of the warrants, but the exclusion of evidence produced by the seizure from the forfeiture proceeding. *United States v. One 1975 Pontiac LeMans*, 621 F.2d 444, 450–451 (1st Cir.1980).[15] *Accord Livonia Road*, 889 F.2d at 1265–66. As a result, Claimant is not entitled to the dismissal of the seizure warrant even though his constitutional rights have been violated. Claimant may, if he chooses, offer a motion *in limine* seeking to exclude from the trial evidence associated with this illegal seizure.

### B. Probable Cause and Arrest Warrant

█ The Court need not dwell long on Claimant's remaining arguments. Claim-

**14.** The Supreme Court later interpreted *Pearson Yacht*, in *dicta*, to stand for a broader proposition than that stated herein: "*Pearson Yacht* clearly indicates that due process does not require federal customs officials to conduct a hearing before seizing items subject to forfeiture." *United States v. $8,850*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983). The present case involves neither federal customs officials nor easily transported monetary instruments being carried into the United States. Accordingly, this *dicta*, if it is governing precedent at all, is irrelevant to the decision of this matter.

**15.** The First Circuit also suggested the availability of damages actions in some cases involving unconstitutional seizures. *Id.* at 451.

ant argues that probable cause was lacking at the time the seizure warrant was issued. The Court's role when reviewing a probable cause determination is to ensure that, based on the totality of the circumstances, the Magistrate Judge had a substantial basis for concluding that the seizure was supported by probable cause. *United States v. Caiazzo*, 650 F.Supp. 92, 94 (D.Me.1986) (Carter, J.) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). The Affidavit, which was submitted to Magistrate Judge Brownell at the time Plaintiff sought this seizure warrant, provides more than the requisite basis for a probable cause determination. As a result, the Court will not disturb Magistrate Judge Brownell's finding that probable cause existed.

Claimant also argues that the issuance of an *in rem* arrest warrant by a deputy clerk of court violated the Fourth Amendment's requirement that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const., amend. IV. Specifically, Claimant argues that a probable cause determination must be made *by a judicial officer* before a warrant may issue. The Court offers no opinion on the constitutional question Claimant is attempting to raise. A probable cause determination was made by a judicial officer—Magistrate Judge Brownell—one week before the arrest warrants were issued by the deputy clerk on March 29, 1991. As a result, the claimed violation of Claimant's purported Fourth Amendment rights did not occur.

Accordingly, the Court hereby *DENIES* Claimant's motion to dismiss the Verified Complaint. The Court further *DENIES* Claimant's motion to dismiss the warrant of seizure and the warrant of arrest.

So ORDERED.